UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

JOSEPH and CAROLYN KEITH,   No. 11-12535

                Debtor(s).
_____/

EXCHANGE BANK,

                Plaintiff(s),

    v.   A.P. No. 11-1248

JOSEPH and CAROLYN KEITH,

                Defendant(s).
_____/

Memorandum After Trial
_____

I. Introduction

    Until the real estate market collapsed, both plaintiff Exchange Bank and defendant Joseph Keith were deeply involved in local real estate, Keith as a developer and builder and the Bank as a financier of real estate projects. Keith and his wife had guaranteed numerous loans made by the Bank on various projects over their long relationship. As of the end of 2007, the Keiths were indebted to the bank in excess of $35 million. The Keiths filed their Chapter 11 bankruptcy petition on July 5,

1

2011, still owing the Bank about $21 million in unsecured debt. By this adversary proceeding the Bank seeks a declaration that a part of this debt, either $450,000 or $500,000, is nondischargeable due to the Keiths' alleged fraud.[1] While the court will find in favor of the Bank, it is not for any of the flawed arguments the Bank makes.

II. Facts

The basis of the Bank's claims relates to the Keiths' actions in the summer of 2008, long after the Keiths had incurred their liability to the Bank and when the Keiths were in dire financial straits. The Keiths received a tax refund of $2.6 million on June 9, 2008. At that time, Joseph Keith had a close friend of some means, Russell Flynn, to whom the Keiths owed more than $2 million on account of prior loans. On August 19, 2008, Joseph Keith transferred $500,000 from the tax refund to Flynn to hold for him, to be returned as needed, because Keith was afraid that the Bank would attach it if he kept it in his own bank account. For his part, Flynn did not care how the transfer was characterized. He placed the funds in his bank account, commingled with other funds, treating it as a payment on account but readily agreeable to loan it back to his friend as needed.

The Bank had decided that it would first exhaust its secured remedies and then sue the Keiths on the unrecovered balance. However, on January 20, 2009, pursuant to one of a series of forbearance agreements, Joseph Keith gave the Bank a personal financial statement that did not list the $500,000 "held" by Flynn. It listed Flynn as an unsecured creditor in the amount of $750,000.

On November 10, 2009, the Bank filed suit against the Keiths in state court. At that time, the Keiths had received $50,000 from Flynn but Flynn still "held" $450,000 from the August 19, 2008, transfer. On November 18, 2009, the Keiths gave the Bank a financial statement which did not list the

---

[1] A plan of reorganization has been confirmed which preserves the right of the Bank to prosecute this adversary proceeding.

2

1 $450,000 as an asset.[2] It listed Flynn as an unsecured creditor in the amount of $2.75 million.

III. The Bank's Arguments

The Bank has two independent theories as to why it has nondischargeable claims against the Keiths. First, it argues that it entered into the January, 2009, forbearance agreement in reliance on the Keith's personal financial statement that did not disclose the $500,000.00 "held" by Flynn, so that the Keiths obtained an extension of credit by a false written financial statement [ § 523(a)(2)(B) of the Bankruptcy Code]. Second, the Bank argues that the November 18, 2009, financial statement was false in failing to disclose the "held" funds and, had the Bank known of the funds it would have attached them, so that they have a claim for $450,000 under § 523(a)(2)(A).

The difficulty the court has with both arguments is finding that the Bank has suffered any damages due to the alleged fraud. Keith made a transfer to Flynn with the intent to hinder Exchange Bank so that, if the bankruptcy had been filed within a year and this case was a Chapter 7 case, the Keiths might have lost their discharge pursuant to § 727(a)(2)(A) of the Code. Since this is not a Chapter 7 and the transfer was not within a year, that remedy is not available. In order for there to be liability under § 523(a)(2)(A) or (B), there must be damages.

In order for there to be liability under § 523(a)(2)(B), the Bank must show that it suffered some damage as a result of forbearance. Here, the Bank does not argue that it would have recovered more from the Keiths had it not entered into the January, 2009, forbearance agreement; *other than the $500,000 itself.* If it could not have recovered the $500,000, it had no damages due to fraud.[3] *In re*

---

[2] The Keiths and the Bank had entered into a series of forbearance agreements, accompanied by personal financial statements. This is the only one relevant to this adversary proceeding.

[3] Moreover, as to the § 523(a)(2)(B) claim, the Bank has not established reliance. The evidence before the court is that it was waiting to file suit until its secured remedies were exhausted. No bank officer testified that it would have filed sooner if it had known about the transfer to Flynn, nor does the court draw that inference from general testimony that the Bank is always aggressive in seeking attachment. In fact, under California law, an attachment cannot be issued on behalf of a creditor

3

*Siriani,* 967 F.2d 302, 305 (9th Cir. 1992).[4]

Likewise, the Bank's § 523(a)(2)(A) claim is based on the premise that if it had known about the $450,000 "held" by Flynn it could have attached them. If this premise is false, there were no damages.[5]

Since Flynn did not in any way segregate the funds he "held" for Keith, all the Keiths had, at most, was an expressed willingness from Flynn to make future loans to friends who already owed him much more than future loans. It does not appear that such a willingness is attachable under California law, which generally does not allow attachment of contingent and uncertain obligations.[6] *Javorek v. Superior Court,* 17 Cal.3d 629, 643 (1976). The Bank has not shown that anything was subject to attachment, and therefore has not met its burden of showing that it suffered any damages.

Joseph Keith's arrangement with Flynn was very foolish, for at least three reasons. First, it was not necessary; given the large amount Keith already owed Flynn, a perfectly proper arrangement could have been made. Second, it probably created an avoidable transfer to his friend when that was not necessary. Third, under other circumstances Keith could have lost his discharge for it. The problem with the Bank's arguments here is that it asserts that concealing the foolish arrangement created an individual nondischargeable debt for fraud. The transfer may be avoidable, and a discharge may be lost, but there can be no nondischargeable debt for fraud without damages to the plaintiff creditor as

---

holding real estate as security. 16A **Cal.Jur.3d**, Creditors' Rights and Remedies § 79. The Bank did not show that it was unsecured in January of 2009.

[4]*Siriani* also requires that the plaintiff prove that the creditor had a remedy which later became valueless. In this case, the evidence established that the Bank is still pursuing Flynn; there is no evidence that the right to recover the transfer became valueless.

[5]The Bank's case is premised only on lack of a prejudgment attachment. It does not argue, nor is there any evidence for, any other sort of remedy *which was lost*, and therefore constituted damages due to fraud.

[6]Property of an individual subject to attachment is specified in § 487.010(c) of the California Code of Civil Procedure.

4

1 opposed to the estate as a whole.[7]

2

3 IV. Basis for Nondischargeability

4 The Bank has made things harder for itself and the court by focusing on the financial statements
5 instead of the transfer itself. When a debtor makes a fraudulent transfer with the intent to harm a
6 specific creditor, that creditor has a nondischargeable claim under § 523(a)(6) for its damages. *In re*
7 *Bammer,* 131 F.3d 788 (9th Cir.1997).[8] See also *In re Jennings,* 670 F.3d 1329, 1334 (11th Cir. 2012).
8 It is the transfer itself, not the subsequent failure to list the transferred funds as an asset in the financial
9 statement, that created the nondischargeable debt.

10 The transfer to Flynn was wrongful, intentional, and necessarily harmed the Bank by reducing
11 the assets it could reach. The court does not find just cause for Keith's actions because he could have
12 legitimately made a loan payment to Flynn rather than creating a slush fund. If Keith had not made the
13 fraudulent transfer to Flynn, he would have had $450,000 which the Bank could have attached when it
14 filed its state court complaint. Accordingly, the Bank has a nondischargeble claim against the Keiths
15 for $450,000.[9]

---

[7] The Bank argues that the law is contrary. Relying on *McClellan v. Cantrell*, 217 F.2d 890 (9th Cir. 2000), the Bank argues that a transfer with the intent to hinder a creditor creates a non-dischargeable debt under § 523(a)(2)(A) in the amount of the transfer without the need to show damages. However, as the Bankruptcy Appellate Panel has noted, "neither the Ninth Circuit nor this Panel has endorsed the approach taken to interpretation of § 523(a)(2)(A) in *McClellan* in any reported decision. On the other hand, there is ample authority in this Circuit instructing that the provisions of the § 523(a) exceptions to discharge should be construed narrowly." *In re Kimmell,* 2006 WL 6810976, *8 (9th Cir.BAP 2006). See also *Lim v. Brown,* 2012 WL 1496205, *4 (N.D.Cal.2012).

[8] *Bammer* was decided before *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), and is therefore wrong insofar as it holds that no intent to injure is necessary. However, in this case Keith made the transfer to Flynn with the specific intent to harm the Bank so the requirement of *Geiger* is met.

[9] The court sees no basis for limiting the finding to Joseph Keith, as Carolyn Keith gave him *carte blanche* to act in her behalf, including signing her name, and she benefitted from the act.

5

V. Conclusion

The court finds no merit to the Bank's arguments, which are attempts to pound square pegs into round holes. However, the Bank does have a sound basis for judgment even if it did not find it. Pursuant to *Bammer*, it will have a nondischargeable judgment against the Keiths pursuant to § 523(a)(6).

The matter of costs is problematic for the court in this case. The court spent considerable time dealing with the Bank's § 523(a)(2) arguments, and was not happy when it came across *Bammer* and *Jennings.* While these cases compel a ruling in favor of the Bank, the failure of the Bank to argue § 523(a)(6) probably made the case much more difficult to settle. The Keiths, having successfully refuted all the arguments made by the Bank, cannot be very happy that the court has discovered another route the Bank did not take. Under these circumstances, the court is inclined to exercise its discretion and order each side to bear its own costs.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for the Bank shall submit an appropriate form of judgment forthwith if it does not seek an award of costs. If it believes that the court does not have discretion to withhold costs for the reasons stated above, it shall file an appropriate motion.

Dated: November 26, 2012

Alan Jaroslovsky
U.S. Bankruptcy Judge